UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| AARON BERT FODGE,<br><br>                    Plaintiff,<br><br>        vs.<br><br>BRENT REINKE, SHANE EVANS,<br>RONA SIEGERT, CORIZON INC.,<br>TOM DOLAN, SCOTT LOSSMAN,<br>GLEN BABICH, MURRAY YOUNG,<br>RYAN VALLEY, GRANT ROBERTS,<br>CATHERINE WHINNERY,<br><br>                    Defendants. | Case No. 1:13-cv-00331-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it Motions for Summary Judgment filed by the Medical Defendants (Dkt. 87) and Defendant Rona Siegert (Dkt. 88). For the reasons below, the Court will grant the Motions.

## BACKGROUND

Plaintiff Aaron Fodge is a prisoner in the custody of the Idaho Department of Correction (IDOC). Fodge suffers from a painful right foot condition arising from injuries he sustained in a 1976 motorcycle accident. *Second Amended Compl. (SAC)* ¶ 15,

Dkt. 23. Since then, Fodge's foot condition has caused him considerable pain and difficulty walking. For example, due to his foot condition, Fodge has "subsequently injured the right knee several times," and one injury required him to "use crutches for 6 months before it would support weight." *Dr. Mabeus Ltr.*, Dkt. 11, p. 6.

Fodge has received medical treatment for his foot condition. In 2001, while Fodge was in IDOC's custody, Dr. Duane Mabeus issued a medical memorandum explaining that Fodge's "right leg is a little longer than the left and the right foot tends to turn inward until weight is brought upon it." *Id.* Because Fodge's foot condition puts unusual strain on the outer right side of footwear, Dr. Mabeus recommended that Fodge be provided with "high top boots" to "hold the foot in a normal position so that it strikes the ground in a normal position." *Id.* Shortly thereafter, Fodge received shoes conforming to Dr. Mabeus's recommendation. *See Fodge Opp. Br.* at 14, Dkt. 101.

In April 2011, IDOC transferred Fodge to the Idaho State Correctional Institution (ISCI). *Young Aff.* ¶ 6, Dkt. 87-16. Since that time, Fodge has received consistent medical treatment for his foot condition. *See Order* at 6-8, Dkt. 59. He also has been fitted for and received custom shoes to accommodate his foot condition. *Id.* Nevertheless, relying on Dr. Mabeus's 2001 medical memorandum, Fodge disputes the adequacy of treatment at ISCI. *SAC* ¶ 32, Dkt. 23. Fodge claims his medical providers have not taken "the appropriate steps to properly treat his medical problem with the proper footwear . . . which results in potentially permanent damage upon himself for he still suffers in pain . . . ." *Id.* Fodge specifically seeks high top boots resembling ones Dr. Mabeus recommended in 2001. *Id.*

MEMORANDUM DECISION AND ORDER - 2

Fodge's medical providers at ISCI, however, have opined that high top boots are not necessary to adequately treat his foot condition. Fodge alleges ISCI's refusal to provide him with high top boots violates the Eighth Amendment. Defendants Catherine Whinnery, M.D., Murray Young, M.D., and Ryan Valley (Medical Defendants), in addition to Defendant Rona Siegert, have filed Motions for Summary Judgment, arguing that Fodge has been provided with constitutionally adequate medical treatment.

## LEGAL STANDARD

Summary judgment is proper where the moving party shows that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but instead is the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The Court must view the evidence in the light most favorable to the non-moving party and must not make credibility findings. *Id.* at 255. However, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v.*

*Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988). The Court must be "guided by the substantive evidentiary standards that apply to the case." *Liberty Lobby*, 477 U.S. at 255.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence, like affidavits or deposition excerpts, but may simply point out the absence of evidence to support the non-moving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000). The burden then shifts to the non-moving party to produce evidence sufficient to support a jury verdict in his favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and, by "affidavits, or by the depositions, answers to interrogatories, or admissions on file," point to the existence of a genuine issue of material fact. *Celotex*, 477 U.S. at 324.

## DISCUSSION

### 1. The Medical Defendants' Motion for Summary Judgment

#### A. Negligence under Idaho Code § 6-902A

Defendants Drs. Whinnery and Young seek summary judgment on Fodge's negligence claim under Idaho Code § 6-902A. Title 6, Chapter 9 of the Idaho Code applies when governmental entities and its employees are sued in tort. A governmental entity "means and includes the state and political subdivisions." Idaho Code § 6-902(3). An employee is a person "acting on behalf of the governmental entity in any official capacity . . . ." *Id.* § 6-902(4). Supervisory physicians employed by non-governmental entities are considered governmental employees when they "supervise[] the activities of

personnel affiliated with a licensed ambulance or non-transport service . . . when the licensed ambulance or non-transport service is operated under the control of a governmental authority." *Id.* § 6-902A(2)(b).

Here, the Court finds summary judgment proper for Drs. Whinnery and Young because they were not governmental employees. Neither the State of Idaho nor any of its political subdivisions employed Drs. Whinnery and Young. As Fodge concedes, Corizon, a private entity, employed Drs. Whinnery and Young. *Fodge Opp. Br.* at 9, Dkt. 101. And, because it is undisputed that Drs. Whinnery and Young never supervised personnel affiliated with a licensed ambulance or non-transport service, Idaho Code § 6-902A(2)(b) does not apply. Thus, the Court will grant Drs. Whinnery and Young summary judgment on Fodge's negligence claim under Idaho Code § 6-902A.

**B.      Deprivation of Civil Rights under 42 U.S.C. § 1983**

The Medical Defendants seek summary judgment on Fodge's claim under 42 U.S.C. § 1983 for deprivation of civil rights. Fodge alleges the medical treatment he has received for his foot condition at ISCI violates the Eighth Amendment. Deliberate indifference to a serious medical need violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A plaintiff makes a *prima facie* showing of deliberate indifference by showing that (1) he faced a serious medical need, and (2) the defendants were deliberately indifferent to his serious medical need—that is, they knew of it and disregarded it by failing to take reasonable measures to address it. *Farmer v. Brennan*, 511 U.S. 825, 836-37 (1994).

### (1)    Serious Medical Need

The Supreme Court has noted that "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*, 429 U.S. at 103-04). "Indications that a plaintiff has a serious medical need include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

The Court finds that Fodge's foot condition is a serious medical need. Construing all facts in the light most favorable to Fodge, his foot condition has caused him considerable pain and difficulty walking. It also has required him to undergo a course of medical treatment, and various medical providers have found his foot condition "important and worthy of comment or treatment." *Colwell*, 763 F.3d at 1066 (quoting *McGuckin*, 974 F.2d at 1060). Thus, Fodge has established his foot condition constitutes a serious medical need.

### (2)    Deliberate Indifference

Deliberate indifference requires "a purposeful act or failure to act on the part of the defendant." *McGuckin*, 974 F.2d at 1060. It requires evidence that the defendants knowingly disregarded a substantial risk of serious harm to the plaintiff. *Farmer*, 511

U.S. at 836-37. To withstand summary judgment, sweeping conclusory allegations will not suffice; the plaintiff must instead "set forth specific facts as to each individual defendant's deliberate indifference." *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir 1988).

Differences in judgment between the plaintiff and medical providers regarding appropriate medical diagnosis and treatment are not enough to establish deliberate indifference. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Similarly, indifference, medical malpractice, or negligence do not establish deliberate indifference. *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980). This Circuit has held that summary dismissal is proper if medical personnel have been "consistently responsive to [the plaintiff's] medical needs," and there has been no showing that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury." *Toguchi v. Chung*, 391 F.3d 1051, 1061 (9th Cir. 2004).

### (a)      Defendant Valley

Fodge seeks to hold Valley liable as a supervisor in his role as ISCI's Health Services Administrator. Because § 1983 does not permit *respondeat superior* liability, a supervisor is only subject to liability for subordinates' constitutional violations if the supervisor "directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Fodge filed his Complaint on July 30, 2013, and Second Amended Complaint on February 18, 2014. *See* Dkts. 1, 23. Valley did not begin working at ISCI until January 2014, and Fodge's sole allegation against Valley is that Fodge "on or about April 11, 2013, submitted a[n] IDOC Concern Form to Tina Williams, Corizon Inc. HSA who defendant Valley is the successor in

office to, requesting that his boots be replaced for they were wor[n] out and the stitching

was coming out." *SAC* ¶ 21, Dkt. 23. Because Fodge makes no additional allegations

against Valley, the Court will construe Fodge's claim as one seeking to hold Valley liable

for the acts of his predecessor, Tina Williams.

A supervisor is only subject to liability for the acts of his predecessor if

"supplemental findings of fact indicat[e] that the new officer will continue the practices

of his predecessor." *Mayor of the City of Phila. v. Ed. Equality League*, 415 U.S. 605,

622 (1974). Fodge has not met this burden. Fodge's sole allegation against Valley set

forth above does not show Valley continued the practices of Tina Williams.

Consequently, the Court will grant Valley summary judgment.

### (b)   Defendant Dr. Young

Fodge alleges Dr. Young was deliberately indifferent in two ways.  First, Fodge

points to Dr. Young's denial of Fodge's July 2013 Offender Concern Form, in which

Fodge requested new high top boots. *See SAC* ¶ 29, Dkt. 23; *Fodge Opp. Br.* at 16-17,

Dkt. 101. Dr. Young made this decision after evaluating the course of Fodge's treatment,

which, as the following will demonstrate, shows Fodge's foot condition was already

being adequately treated.

Medical providers began treating Fodge's foot condition in May 2011,

approximately one-month after Fodge arrived at ISCI. At that time, medical providers

gave Fodge a lace-up brace for his right foot. *Young Aff.* ¶ 6, Dkt. 87-16. In July 2011,

medical providers arranged for Rosenhdahl Foot and Shoe Center (Rosendahl) to

examine and provide Fodge with custom shoes to accommodate his foot condition. *ISCI*

**MEMORANDUM DECISION AND ORDER - 8**

218-19, Dkt. 48-1, Ex. 16. Fodge received the shoes on August 30, 2011, and medical documents state the shoes fit properly. *ISCI* 218, Dkt. 48-1, Ex. 16. Though Fodge contends the shoes did not fit properly, *Fodge Aff.* ¶ 11, Dkt. 101-02, "a difference of opinion between a prisoner patient and prison medical authorities as to what treatment is proper and necessary does not give rise to a claim." *Mayfield v. Craven*, 433 F.2d 873, 874 (9th Cir. 1970).

In September 2011, Fodge received an ankle brace after tweaking his right ankle. *ISCI* 72, Dkt. 48-1, Ex. 14. But Fodge continued experiencing foot pain and submitted additional Health Services Requests (HSR) and Offender Concern Forms (OCF) during November 2011 to January 2012 concerning his foot condition. *ISCI* 246, 248, 249, 255, Dkt. 48-1, Ex. 13. Accordingly, Fodge again met with Rosendahl in February 2012. *ISCI* 70, Dkt. 48-1, Ex. 14. He asked for 12" or 14" boots so that he could stop wearing the ankle brace. *Id.* Rosendahl discussed Fodge's request with then-Health Services Administrator Tina Williams. *Id.* Williams found high top boots unnecessary and instructed Rosendahl to insert padded liners in Fodge's current shoes to allow Fodge to discontinue wearing the ankle brace. *Id.* The padded liners were installed on April 5, 2012. *ISCI* 364, Dkt. 48-1, Ex. 13.

Fodge submitted additional HSRs concerning his foot condition in May and June 2012, prompting another meeting with Rosendahl in August 2012. *ISCI* 230, 240, Dkt. 48-1, Ex. 13; *ISCI* 64, Dkt. 48-1, Ex. 14. At that meeting, Fodge was "focused on getting 10' – 12' tops logging style boots." *Id.* Fodge's medical records show Rosendahl offered him new 8" boots, but Fodge apparently rejected them. *ISCI* 64, Dkt. 48-1, Ex. 14; *Fodge*

*Aff.* ¶ 14, Dkt. 101-2. Fodge disputes that fact, claiming instead he never rejected 8"
boots, and it "was other Corizon employees who chose to ignor[e] this and not give [him]
any boots whatsoever to date." *Fodge Aff.* ¶ 14, Dkt. 101-2. The Court will resolve that
dispute in favor of Fodge, the non-moving party. Even so, that dispute is immaterial
because Rosendahl re-examined Fodge in October 2012 and ordered him new Propet
model boots after finding his old shoes had holes in them. *ISCI* 64, Dkt. 48-1, Ex. 14.
Fodge received the Propet boots on November 1, 2012. *Id.*

Fodge continued requesting new shoes after receiving the Propet boots. *See ISCI*
64-65, Dkt. 48-1, Ex. 14. Fodge claims the Propet boots did not address the "damages
inflicted" but instead "weaken[ed] the muscles and worsen[ed] the problem." *Fodge Aff.*
¶ 15, Dkt. 101-2. Medical providers responded to Fodge's requests by discussing them
with the Regional Medical Director. *See ISCI* 65, Dkt. 48-1, Ex. 14. The decision was
made to order Fodge an ankle-foot orthotic brace, which medical providers believed
would be more beneficial to Fodge than new shoes. *Id.*

When Fodge submitted an OCF to Dr. Young in July 2013 requesting high top
boots, Dr. Young denied Fodge's request after evaluating the course of Fodge's treatment
detailed above. *Young Aff.* ¶ 5, Dkt. 87-16. Dr. Young also noted Fodge had received a
bottom bunk and a cane, in addition to physical therapy and an exercise plan. *Id.* ¶ 13.
Consequently, Dr. Young concluded Fodge's foot condition was being adequately
treated. *Id.* ¶ 5. Viewing all facts in the light most favorable to Fodge, the Court finds that
Dr. Young's decision on Fodge's July 2013 OCF does not constitute deliberate
indifference.

MEMORANDUM DECISION AND ORDER - 10

Fodge's second argument is that Dr. Young was deliberately indifferent by attempting to have "inappropriate contact with Plaintiff" on September 18, 2014. *See Fodge Opp. Br.* at 16-17, Dkt. 101. Because Fodge disputes Dr. Young's summary of that meeting, the Court will resolve that dispute in favor of Fodge, the non-moving party. According to Fodge, Dr. Young asked him "[w]hy are you suing me?" *Fodge Aff.* ¶ 33, Dkt. 101-2. Fodge refused to discuss the lawsuit and immediately left the meeting. *Id.* Dr. Young then apparently followed Fodge out of the meeting and asked him to return. *Id.* By then, Fodge had already relayed the encounter to other staff, who instructed him not to return. *Id.* Viewed in the light most favorable to Fodge, these facts do not show Dr. Young was deliberately indifferent. Fodge never explains how this interaction with Dr. Young impacted Fodge's treatment, much less how Dr. Young denied or "disregard[ed] am excessive risk to [Fodge's] health and safety." *Toguchi*, 391 F.3d at 1057 (quotation marks and citation omitted). Whether Dr. Young's actions were medically reasonable is a question the Court does not reach. *See id.* at 1061.

Because no genuine issue of material fact exists as to whether Dr. Young was deliberately indifferent, the Court will grant him summary judgment.

### (c)   Defendant Dr. Whinnery

Fodge's allegations against Dr. Whinnery also fall short of deliberate indifference. From April 2012 to December 2014, Dr. Whinnery treated Fodge in the Chronic Disease Clinic (CDC) for high blood pressure, hypertension, and gastroesophagal reflux disease. *Whinnery Aff.* ¶ 5-6, Dkt. 87-17. During the course of treatment, Fodge informed Dr. Whinnery how his foot condition exacerbated his high blood pressure. *Id.* ¶ 7. Because

Dr. Whinnery made no effort to treat Fodge's foot condition, Fodge contends summary judgment should be denied.

Fodge's argument overlooks that the CDC treats chronic diseases, not physical ailments. *Id.* ¶ 5. As Dr. Whinnery explained, if Fodge "wanted to be fully assessed for any ankle and foot issues, then he should have submitted an HSR, which is how an offender obtains access to medical care." *Id.* ¶ 7. Put another way, Dr. Whinnery had no obligation to treat Fodge's foot condition. *See Salcido v. Zarek*, 2006 WL 708613, at *4 (N.D. Cal. Mar. 16, 2006) (granting defendant doctor summary judgment when there was no evidence that doctor was "required to take such additional steps.") *aff'd*, 237 F. App'x 151 (9th Cir. 2007); *Walker v. Benjamin*, 293 F.3d 1030, 1038 (7th Cir. 2002) (granting defendant doctor summary judgment when plaintiff produced no evidence showing failure to receive antibiotics was in any way within doctor's control). Accordingly, the Court will grant summary judgment for Dr. Whinnery.

## 2.    Defendant Siegert's Motion for Summary Judgment

Siegert seeks summary judgment on Fodge's deliberate indifference claim under § 1983. Siegert works as IDOC's Health Services Director. She oversees IDOC's medical contract, "which includes oversight of the medical treatment provided to inmates to ensure that treatment complies with Eighth Amendment constitutional standards." *Siegert Aff.* ¶ 3, Dkt. 88-3. Supervisors can be liable under § 1983 for deliberate indifference if they directly participated in or had "knowledge of and acquiesce[d] in unconstitutional conduct by [their] subordinates." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). A supervisor may also be liable in her individual capacity "for [her] own culpable action or

**MEMORANDUM DECISION AND ORDER - 12**

inaction in the training, supervision, or control of his subordinates; for [her] acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Id.* at 1208.

Having concluded that the Medical Defendants did not violate Fodge's Eighth Amendment rights, the Court's sole inquiry as to Siegert is whether she is subject to liability in her individual capacity for deliberate indifference to Fodge's foot condition, a serious medical need. Fodge argues Siegert was deliberately indifferent because she (1) denied his OCFs and grievances requesting new boots, and (2) eventually informed Fodge he had exhausted the administrative process. *See Fodge Opp. Br.* at 17-18, Dkt. 101. The Court finds neither argument establishes deliberate indifference.

First, Siegert's denials of Fodge's OCFs and grievances do not establish deliberate indifference. Importantly, the undisputed facts show that Siegert responded to each OCF and grievance Fodge filed. *Siegert Aff.* ¶¶ 3-13, Dkt. 88-3. When doing so, Siegert evaluated Fodge's medical records and course of treatment, which caused her to conclude Fodge's medical providers were adequately treating his foot condition. *Id.* ¶¶ 4, 5, 8, 11-13. Though Fodge disagrees with Siegert's decisions, that disagreement does not establish deliberate indifference. *Bryant v. Farmer*, 460 F. App'x 644, 645 (9th Cir. 2011) ("Bryant's allegations amounted to a disagreement with the course of treatment and the quality of post-surgical care he received, neither of which constitutes deliberate indifference.").

Second, informing Fodge in June 2013 he had exhausted the administrative process does not constitute deliberate indifference. Even though Siegert informed Fodge

of this fact, Siegert continued responding to every OCF and grievance Fodge filed. *Id.* ¶ 10. Moreover, it is undisputed that Fodge continued receiving treatment for his foot condition after Siegert informed Fodge he had exhausted the administrative process. Accordingly, the Court finds that the undisputed facts show that Siegert was not deliberately indifferent and will grant her summary judgment.[1]

## ORDER

1.    Medical Defendants' Motion for Summary Judgment (Dkt. 87) is **GRANTED.**

2.    Rona Siegert's Motion for Summary Judgment (Dkt. 88) is **GRANTED**.

3.    The Court will enter a separate judgment in accordance with Fed.R.Civ.P. 58.

DATED: March 14, 2016

B. Lynn Winmill
Chief Judge
United States District Court

---

[1] Because the Court finds summary judgment proper for Siegert, the Court need not address whether Siegert is entitled to qualified immunity.

**MEMORANDUM DECISION AND ORDER - 14**